34

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ORIGINAL**

FILED

AUG 27 2014

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

USMAN BUTT,

                Defendant.

_____/

No. 13-20039

Hon. Bernard A. Friedman

Offense(s):  18 U.S.C. § 1349
(Conspiracy to Commit Health Care
Fraud)
Maximum Penalty: 10 years and/or
$250,000 fine or twice the gross gain/loss

26 U.S.C. § 7206(2) (Aiding or Assisting
in Preparing a Fraudulent Tax Return)
Maximum Penalty:  3 years and/or
$100,000 fine

---

# Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant

Usman Butt and the government agree as follows:

## 1.    **Guilty Plea**

### A.    **Count(s) of Conviction**

Defendant will enter a plea of guilty to two counts in a Superseding

Information:  Count 1 charging Conspiracy to Commit Health Care Fraud in

violation of 18 U.S.C. § 1349 and Count 2 charging defendant with Aiding or

Assisting in Preparing a Fraudulent Tax Return in violation of 26 U.S.C. § 7206(2).

### B.   Elements of Offenses

The elements of Count 1 (18 U.S.C. § 1349) of the Superseding Information

are as follows:

| | |
|---|---|
| First: | That two or more persons, in some way or manner, came to a mutual understanding to try and accomplish a common and unlawful plan, as charged in the Superseding Information; and |
| Second: | That the defendant, knowing the unlawful purpose of the plan, willfully joined it. |

As set forth in the Superseding Information, defendant is charged with

conspiring to violate the health care fraud statute, 18 U.S.C. § 1347, which makes it

a Federal offense for anyone, in connection with the delivery of or payment for

health care benefits, items, or services, to knowingly and willfully execute, or

attempt to execute, a scheme or artifice (1) to defraud any health care benefit

program; or (2) to obtain by means of materially false or fraudulent pretenses,

representations, or promises, any of the money or property owned by, or under the

custody or control of, any health care benefit program.

Defendant is also charged in Count 2 of the Superseding Information with

aiding or assisting in the filing a false or fraudulent tax return, in violation of 26

U.S.C. § 7206(2), for improperly deducting expenses from the tax return for tax

year 2009 for Prestige Home Health Services, Inc., with the purpose of wrongfully

reducing the tax owed.   The elements of Count 2 (26 U.S.C. § 7206(2)) of the

Superseding Information are as follows:

| | |
|---|---|
| First: | The defendant aided or assisted in, procured, counseled, or advised the preparation or presentation of a document in connection with a matter arising under the internal revenue laws; |
| Second: | The document was false as to a material matter; and |
| Third: | The act of the defendant was willful. |

### C.   Factual Basis for Guilty Plea

The following facts are a sufficient and accurate basis for defendant's guilty

pleas:

Beginning in or about 2008 and continuing through in or about January 2013,

Defendant Usman Butt knowingly and willfully conspired to devise a scheme to

defraud Medicare, in violation of 18 U.S.C. § 1349.  Medicare is a "health care

benefit program" of the United States as defined by 18 U.S.C. § 24, and affects

commerce.  Additionally, in or about tax year 2009, defendant aided and assisted

his co-owner of Prestige Home Health Services, Inc. ("Prestige"), in willfully

preparing a false corporate tax return for Prestige for the specific purpose of

illegally reducing the tax owed to the United States, in violation of 26 U.S.C.

§ 7206(2).

During all relevant times below, defendant was a resident of Macomb

County, Michigan, and held a number of different positions and titles at home

3

health care agencies Prestige, as well as at Royal Home Health Care, Inc. ("Royal").

Prestige and Royal were located in the Eastern District of Michigan and billed

Medicare. During the relevant period, defendant was an owner, president, director,

and registered agent of Prestige and an owner as well as the president, director,

treasurer, and secretary of Royal.

### 1. Prestige Home Health Services

In or about May 2008, co-defendant and a co-conspirator purchased Prestige

and thereafter, defendant and his co-conspirator began operating and managing

Prestige. Prestige held itself out as a home health care services agency that would

provide physical therapy services to Medicare beneficiaries and would bill

Medicare for those services. While operating Prestige, defendant and others agreed

to, and did, pay and direct the payment of kickbacks to beneficiary recruiters who

obtained Medicare beneficiaries' information needed to submit claims to Medicare

for home health care services—including physical therapy and skilled nursing—that

were never rendered and not medically necessary. Defendant wrote checks or

provided cash kickbacks to recruiters who referred patients to Prestige. Further,

Defendant and others agreed to, and did, authorize and pay medical personnel,

including therapists and nurses, to fabricate physical therapy and nursing files for

patients to falsely show services being provided and as medically necessary when,

in fact, those services were not rendered and not medically necessary.

4

During the relevant period, defendant and others agreed to, and did, submit and cause the submission of claims to Medicare for those services that were never provided and not medically necessary as well as for services that were procured through the payment of kickbacks. As a result of defendant's fraudulent acts, from in or about May 2008 through in or about January 2013, Medicare paid Prestige approximately $11,457,953.06.

2. <u>Royal Home Health Care</u>

In or around August 2009, defendant along with co-defendant and co-conspirator Hemal Bhagat ("Bhagat") and others purchased ownership interests in Royal. Royal was initially located in Clawson, Michigan, and in or around January 2010, its primary business location was relocated to Troy, Michigan.

While operating Royal, defendant and others agreed to, and did, pay and direct the payment of kickbacks to beneficiary recruiters who obtained Medicare beneficiaries' information needed to submit claims to Medicare for home health care services—including physical therapy and skilled nursing—that were never rendered and not medically necessary. Defendant and his conspirators would also offer and provide kickbacks and bribes to beneficiary recruiters, who would themselves offer and provide kickbacks and bribes to Medicare beneficiaries, in exchange for the beneficiaries' Medicare information and signatures on documents

5

needed for the submission of false claims to Medicare. Defendant wrote checks or provided cash kickbacks to recruiters who referred patients to Royal.

Further, defendant and others agreed to, and did, authorize and pay medical personnel, including therapists and nurses, to fabricate physical therapy and nursing files for patients to falsely show services being provided and as medically necessary when, in fact, those services were not rendered and not medically necessary.

During the relevant period, defendant and others agreed to, and did, submit and cause the submission of claims to Medicare for those services that were never provided and not medically necessary as well as for services that were procured through the payment of kickbacks. As a result of defendant's fraudulent acts, from in or about August 2009 through in or about March 2010, Medicare paid Royal approximately $1,149,309.54.

### 3. Aiding and Assisting in Filing Fraudulent Tax Returns

During the relevant period, defendant willfully aided and assisted a co-conspirator in preparing false and fraudulent corporate tax returns with respect to the amount of tax owed to the United States by Prestige. Specifically, with respect to Prestige's corporate return for tax year 2009, defendant participated in deducting as business expenses approximately $945,543.57 of illegal kickbacks paid by defendant and his co-conspirators. Defendant knew these amounts were not proper business expense deductions, but, in his capacity as co-owner of Prestige, allowed

6

them to be deducted for the illegal purpose of underpaying Prestige's income taxes. The resulting tax loss from this filing was $321,485.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for defendant's guilty plea to the charge against him. It does not include all of the facts known to him concerning criminal activity in which he and others engaged. Defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crimes charged. The acts taken by the defendant in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly and not because of accident, mistake, or other innocent reason.

2.      **Sentencing Guidelines**

A.      **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

B.      **Agreed Guideline Range**

There are no sentencing guideline disputes. Except as provided below, the parties recommend that the defendant's guideline range is 97 to 121 months, as set forth on the attached worksheets. If the Court finds:

1.  that defendant's criminal history category is higher than reflected on the attached worksheets, or

7

    2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offenses; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 97 to 121 months, the higher guideline range becomes the agreed range. However, if the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does not authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections 1) and 2), above.

## 3. **Sentence**

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

**A.      Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed the top of the sentencing guideline range as determined by Paragraph 2B.

**B.      Supervised Release**

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is 3 years.  The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that result from any later revocation of supervised release.

**C.      Special Assessment**

Defendant will pay a special assessment of $200 and must provide the government with a receipt for the payment before sentence is imposed.

**D.     Fine**

The Court may impose a fine on Count 1 of the Superseding Information, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, in any amount up to $250,000, or twice the pecuniary gain or loss, pursuant to 18 U.S.C. § 3571(d).  The Court may impose a fine on Count 2 of the Superseding Information, Aiding or Assisting in Preparing a Fraudulent Tax Return in violation of 26 U.S.C. § 7206(2), in any amount up to $100,000, pursuant to 26 U.S.C. § 7206.

**E.     Restitution**

The Court shall order restitution to every identifiable victim of defendant's offenses and all other relevant conduct.  The victims and the full amounts of restitution in this case, are as follows:

U.S. Department of Health and Human Services:   $12,607,262.60

**4.     Cooperation Agreement**

The written cooperation agreement between defendant and the government, entered into on this date, is part of this plea agreement.

**5.     Use of Withdrawn Guilty Plea**

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made

10

under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

## 6.    **Filing of Return**

The defendant agrees to file accurate individual returns (original or amended) for the tax years 2008 through 2012 prior to the time of sentencing.  Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to the defendant's returns after they are filed.

Upon request, defendant will make himself available to the Internal Revenue Service for a face to face interview and will provide the Service with all documentation requested for the purpose of a civil audit.

The defendant will file any other income tax returns currently due within 90 days of sentencing.

### Cooperation with the Internal Revenue Service

The defendant agrees to cooperate with the Internal Revenue Service in the determination of the defendant's income tax liability for the tax years 2008 through 2012.  Cooperation is defined to include the following:

1.  Face to face interview with a representative of the Internal Revenue Service Examination Division within 60 days of sentencing or at a time set by the examining agent.

11

2.  At the request of the Internal Revenue Service, the defendant will provide source documentation relevant to the returns at issue. Source documentation includes, but is not limited to, bank records including checks, books and records of related businesses, substantiation for deductions and expenses claimed, names and addresses of individuals for which payments were made, and investment records.

**Internal Revenue Service Forms**

3.  The defendant agrees to submit prior to the sentencing Form 433-A, Collection Information Statement for Wage Earners and Self Employed Individuals, and if applicable, Form 433-B, Collection Information Statement for Businesses.

4.  The defendant agrees to submit prior to the sentencing a Consent to Disclose Taxpayer Information for the years at issue and subsequent years to allow the Internal Revenue Service to disclose taxpayer information of the defendant to the United States Attorney's Office for the Eastern District of Michigan and the United States Probation Department.

7.    **Exclusion from the Medicare Program and Other Federal Health Care Programs**

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs.  Defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents.  This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

8.    **Other Charges**

If the Court accepts this agreement, the government will dismiss all remaining charges against the defendant in this case.

9.    **Each Party's Right to Withdraw from This Agreement**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B. Defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Part 3. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under

13

this circumstance, the Court may impose a sentence greater than the maximum allowed by Part 3.

**10.    Appeal Waiver**

The defendant waives any right he may have to appeal his conviction. If the defendant's sentence does not exceed 121 months, the defendant also waives any right he may have to appeal his sentence. If the defendant's sentence of imprisonment is at least 97 months, the government waives any right it may have to appeal the defendant's sentence.

**11.    Consequences of Withdrawal of Guilty Plea(s) or Vacation of Conviction(s)**

If defendant is allowed to withdraw his guilty pleas or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea(s) becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea(s) or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

14

## 12.   **Parties to Plea Agreement**

Unless otherwise indicated, this agreement does not bind any government agency except the Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Eastern District of Michigan.

## 13.   **Scope of Plea Agreement**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings, and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

15

14.  **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on July 24, 2014. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

15.  **Forfeiture**

Pursuant to 18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), defendant agrees to forfeit to the United States his interest in all property, real and personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to defendant's conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, as charged in Count 1 of the Superseding Information.

Defendant also agrees to the entry of a personal forfeiture money judgment against him in favor of the United States in the amount to be determined by the Court. Defendant agrees that the Court will determine what amount of money constitutes, or was derived from, the proceeds defendant obtained, directly or indirectly, from the crime he committed as charged in Count 1, and defendant will be ordered to pay that amount under Fed. R. Crim. P. 32.2.

Defendant hereby agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture, incorporating the above-referenced

16

forfeiture money judgment upon application by the United States at, or any time before, his sentencing in this case.

Defendant shall be held jointly and severally responsible for the forfeiture money judgment with all other defendants found guilty of violating Count One of the Indictment (or related counts in Superseding Informations) in *United States v. Aamir, et al.*, Case No. 13-20039 (E.D. Mich.). Defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of defendant. To satisfy the money judgment, defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant also agrees to assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture, disgorgement, transfer, or surrender of all rights, title, and interest, regardless of their nature or form, in the assets which defendant has agreed to forfeit, disgorge, transfer, or surrender, and any other assets, including real and personal property, cash, and other monetary instruments, wherever located, which defendant or others to his knowledge have accumulated as a result of illegal activities alleged in Count 1. Such assistance will involve an agreement on defendant's part to the entry of an order enjoining the

transfer or encumbrance of assets which may be identified as being subject to forfeiture, disgorgement, transfer, or surrender.

Defendant further agrees to identify all assets over which he exercises control, directly or indirectly, or has exercised such control, within the past five years. Defendant also agrees to identify all assets in which he has or had during that time any financial interest and to provide all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds, and any and all other documents necessary to deliver good and marketable title to said property. Defendant agrees to take all steps as requested by the government to obtain from any other parties by any lawful means any records of assets owned at any time by defendant. He also agrees to undergo any polygraph examination the government may choose to administer concerning such assets and to provide and/or consent to the release of his tax returns for the previous five years.

If any property has been seized for forfeiture by a governmental agency in connection with the violation alleged in Count 1, defendant agrees to waive all interest, if any, in any such property in any administrative or judicial forfeiture proceeding, whether criminal or civil, state, or federal.

Defendant further agrees to consent to the entry of orders of forfeiture for all property to be forfeited in this case and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging

18

instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule ll(b)(l)(J), at the time his guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including, but not limited to, any Double Jeopardy challenge and any challenge that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, including taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant further agrees that he will not assist any third party in asserting a claim to property that is subject to forfeiture based upon any of the conduct alleged in Count 1 in any forfeiture proceeding (judicial or non-judicial) and that he will testify truthfully in any judicial forfeiture proceeding if requested to do so by the government.

Defendant further agrees to hold the United States and its agents and employees harmless from any claims whatsoever in connection with the seizure and forfeiture of property covered by this Plea Agreement.

Non-Abatement of Criminal Forfeiture:  Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors, and assigns until the agreed forfeiture, including the money judgment amount, is collected in full.

Barbara L. McQuade
United States Attorney

_Wayne F. Pratt_
Wayne F. Pratt
Assistant United States Attorney
Chief, Health Care Fraud Unit

_Catherine K. Dick for_
Catherine K. Dick
Assistant Chief
Department of Justice
Criminal Division, Fraud Section

_Niall M. O'Donnell_
Niall M. O'Donnell
James P. McDonald
Trial Attorneys
Department of Justice
Criminal Division, Fraud Section

Date: July 25, 2014

By signing below, defendant acknowledges that he has read (or been read) this
entire document, understands it, and agrees to its terms. He also acknowledges that
he is satisfied with his attorney's advice and representation. Defendant agrees that
he has had a full and complete opportunity to confer with his lawyer, and has had
all of his questions answered by his lawyer.

_Elias Muawad_
Elias Muawad, Esq.
Attorney for Usman Butt

_Usman Butt_
Usman Butt

Date: 7-25-14

21

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

## WORKSHEET A (Offense Levels)

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

**1.    BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)**

| Guideline Section | Description | Levels |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense Level | 6 |
| § 2B1.1(b)(1)(K) | Intended Loss Greater than $7,000,000 | 20 |
| § 2B1.1(b)(8) | Health Care Offense > $1,000,000 | 2 |
| § 2B1.1(b)(10)(C) | Sophisticated Means | 2 |
| | | |

**2.    ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)**

| Guideline Section | Description | Levels |
|---|---|---|
| § 3B1.1 | Aggravating Role -- Manager/Super. with 5+ Participants | 3 |
| | | |
| | | |
| | | |

A-1

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

**3.     ADJUSTED OFFENSE LEVEL**

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.



33

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

*If this is the only Worksheet A, check this box and skip Worksheet B.*

*If the defendant has no criminal history, check this box and skip Worksheet C.*



A-2

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

# WORKSHEET B (Multiple Counts)

## Instructions (U.S.S.G. ch. 3, pt. D):

- Group the counts of conviction into distinct Groups of Closely Related Counts. "All counts involving substantially the same harm shall be grouped together into a single Group." (*See* U.S.S.G. § 3D1.2.)

- Determine the offense level applicable to each Group. (*See* U.S.S.G. § 3D1.3.)

- Determine the combined offense level by assigning "units" to each Group as follows (*see* U.S.S.G. § 3D1.4):

  - assign 1 unit to the Group with the highest offense level,
  - assign 1 unit to each additional Group that is equally serious as, or 1 to 4 levels less serious than, the Group with the highest offense level,
  - assign ½ unit to each Group that is 5 to 8 levels less serious than the Group with the highest offense level,
  - assign no units to each Group that is 9 or more levels less serious than the Group with the highest offense level.



1. **GROUP ONE:** COUNT(S)  1
   ADJUSTED OFFENSE LEVEL

2. **GROUP TWO:** COUNT(S)  2
   ADJUSTED OFFENSE LEVEL

3. **GROUP THREE:** COUNT(S)
   ADJUSTED OFFENSE LEVEL

4. **GROUP FOUR:** COUNT(S)
   ADJUSTED OFFENSE LEVEL

5. **TOTAL UNITS**

B-1

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

6. **INCREASE IN OFFENSE LEVEL**
   1 unit ⟶ no increase     2 1/2 – 3 units ⟶ add 3 levels
   1 1/2 units ⟶ add 1 level     3 1/2 – 5 units ⟶ add 4 levels
   2 units ⟶ add 2 levels     > 5 levels ⟶ add 5 levels

   0

7. **ADJUSTED OFFENSE LEVEL OF GROUP WITH THE HIGHEST OFFENSE LEVEL**

   33

8. **COMBINED ADJUSTED OFFENSE LEVEL**

   Enter the sum of the offense levels entered in Items 6 and 7.

   
   33

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

# WORKSHEET C (Criminal History)

Date of defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses):

## 1.   PRIOR SENTENCES

### Prior Sentence of Imprisonment Exceeding 13 Months (U.S.S.G. §§ 4A1.1(a)):                                    **3 POINTS**

Enter 3 points for each prior adult sentence of imprisonment exceeding one year and one month that either (1) was imposed within 15 years of the defendant's commencement of the instant offenses (taking into account relevant conduct and stipulated offenses) or (2) resulted in the defendant's confinement during any part of that 15-year period. (See U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1), (e)(1).)

### Prior Sentence of Imprisonment of at Least 60 Days (U.S.S.G. §§ 4A1.1(b)):                                    **2 POINTS**

Enter 2 points for each prior sentence of imprisonment of at least 60 days not counted under U.S.S.G. § 4A1.1(a) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and resulted in the defendant's confinement during any part of the 5-year period preceding the defendant's commencement of the instant offense (see U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2)(A)).

### Other Prior Sentences (U.S.S.G. §§ 4A1.1(c)):                                    **1 POINT**

Enter 1 point for each prior sentence not counted under U.S.S.G. § 4A1.1(a) or (b) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and was imposed within 5 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)(B)). NOTE:  No more than 4 points may be added under this item.

C-1

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

| Date of Imposition | Status* | Offense | Sentence | Release Date** | Points |
|---|---|---|---|---|---|
| \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | |
| \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | |
| \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | |
| \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | |
| \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | |
| \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | |

\*    If the defendant committed the offense before turning 18, indicate whether he or she was sentenced as a juvenile (J) or as an adult (A).

\*\*    A release date is required in only two situations:  (1) when a sentence covered under U.S.S.G. § 4A1.1(a) was imposed more than 15 years before the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) but resulted in his or her confinement during any part of that 15-year period; or (2) when a sentence counted under U.S.S.G. § 4A1.1(b) was imposed for an offense committed before the defendant turned 18 but resulted in his or her confinement during any part of the 5-year period preceding his or her commencement of the instant offense (taking into account relevant conduct and stipulated offenses).

C-2

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

**2.   COMMISSION OF INSTANT OFFENSE WHILE UNDER PRIOR SENTENCE (U.S.S.G. § 4A1.1(d))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) while under any criminal justice sentence having a custodial or supervisory component, including probation, parole, supervised release, imprisonment, work release, and escape status. (*See* U.S.S.G. §§ 4A1.1(d), 4A1.2(m), (n).) List the type of control and identify the sentence from which it resulted.



**3.   PRIOR SENTENCE RESULTING FROM CRIME OF VIOLENCE (U.S.S.G. § 4A1.1(e))**

Enter 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because such sentence was considered related to another sentence resulting from a conviction for a crime of violence. But enter no points where the sentences are considered related because the offenses occurred on the same occasion. (*See* U.S.S.G. §§ 4A1.1(e), 4A1.2(p).)  Identify the crimes of violence and briefly explain why the cases are considered related. NOTE: No more than 3 points may be added under this item.



**4.   TOTAL CRIMINAL HISTORY POINTS**

Enter the sum of the criminal history points entered in Items 1-4.

 `0`

**5.   CRIMINAL HISTORY CATEGORY**

| Total Criminal History Points | Criminal History Category |
|:---:|:---:|
| 0-1 | I |
| 2-3 | II |
| 4-6 | III |
| 7-9 | IV |
| 10-12 | V |
| ≥13 | VI |

`I`

C-3

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

# WORKSHEET D (Guideline Range)

1. **(COMBINED) ADJUSTED OFFENSE LEVEL**
   Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level entered in item 8 of Worksheet B.

   **33**

2. **ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY (U.S.S.G. § 3E1.1)**

   **-3**

3. **TOTAL OFFENSE LEVEL**

   Enter the difference between Items 1 and 2.

   **30**

4. **CRIMINAL HISTORY CATEGORY**

   Enter "I" if the defendant has no criminal history. Otherwise, enter the criminal history category entered in Item 6 of Worksheet C.

   **I**

5. **CAREER OFFENDER/CRIMINAL LIVELIHOOD/ARMED CAREER CRIMINAL/DANGEROUS SEX OFFENDER (U.S.S.G. ch. 4, pt. B)**
   a. <u>Total Offense Level</u>: If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision (U.S.S.G. § 4B1.3), the armed career criminal provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a total offense level higher than the total offense level entered in Item 3, enter the higher offense level total.

   

   b. <u>Criminal History Category</u>: If the career offender provision (U.S.S.G. § 4B1.1), the armed career criminal provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a criminal history category higher than the criminal history category entered in Item 4, enter the higher criminal history category.

   

6. **GUIDELINE RANGE FROM SENTENCING TABLE (U.S.S.G. CH. 5, PT. A)**
   Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total offense level entered in Item 3 or 5.a and the criminal history category entered in Item 4 or 5.b.

   **97-121**

   months

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

7. **STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE**
   If the maximum sentence authorized by statute is below, or a minimum
   sentence required by statute is above, the guideline range entered in Item 6,
   enter either the guideline range as restricted by statute or the sentence
   required by statute. (*See* U.S.S.G. § 5G1.1.) If the sentence on any count of
   conviction is required by statute to be consecutive to the sentence on any
   other count of conviction, explain why.



months

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

# WORKSHEET E (Authorized Guideline Sentences)

**1. PROBATION**

   a. Imposition of a Term of Probation (U.S.S.G. § 5B1.1)



      1. Probation is not authorized by the guidelines (minimum of guideline range ≥ 10 months or statute of conviction is a Class A or a Class B felony). If this box is checked, go to Item 2 (Split Sentence).

      2. Probation is authorized by the guidelines (minimum of guideline range = zero months).

      3. Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 9 months).

   b. Length of Term of Probation (U.S.S.G. § 5B1.2)

      1. At least 1 year but not more than 5 years (total offense level ≥ 6)

      2. No more than 3 years (total offense level < 6).

   c. Conditions of Probation (U.S.S.G. § 5B1.3)

**2. SPLIT SENTENCE (U.S.S.G. § 5C1.1(C)(2), (D)(2))**



   a. A split sentence is not authorized (minimum of guideline range = 0 months or ≥ 15 months).

   b. A split sentence is authorized (minimum of guideline range > 0 months but ≤ 12 months). The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 10 or 12 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, 6, 8, or 9 months). The authorized length of the term of supervised release is set forth below in Item 4.b.

**3. IMPRISONMENT (U.S.S.G. CH. 5, PT. C)**

A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D). (*See* U.S.S.G. § 5C1.1.)

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

**4.   SUPERVISED RELEASE (U.S.S.G. ch 5., pt. D)**

   a.   Imposition of a Term of Supervised Release (U.S.S.G. § 5D1.1)
      The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute.  The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

   b.   Length of Term of Supervised Release (U.S.S.G. § 5D1.2)

☒   1.   At least 2 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

☐   2.   At least 1 year but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

☐   3.   1 year, where the count of conviction is a Class E felony or a Class A misdemeanor, i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

☐   4.   The statute of conviction requires a minimum term of supervised release of ▓▓▓ months.

   c.   Conditions of Supervised Release  (U.S.S.G. § 5D1.3)

      The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

**5.   RESTITUTION (U.S.S.G. § 5E1.1)**

☐   1.   The court *must* order full restitution to the victim(s) of the offense(s) of conviction.  (*See* 18 U.S.C. §§ 3556, 3663A, 3664.)  The court will determine who the victims are and their restitution amounts.

☒   2.   The court *must* order full restitution to the victim(s) of the offense(s) of conviction.  (*See* 18 U.S.C. §§ 3556, 3663A, 3664)  The parties agree that full restitution is $ 12,607,262.60 .

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

3.  The parties agree that the court *may* order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including $▨▨▨▨▨▨▨▨▨. (*See* 18 U.S.C. §§ 3663(a)(3), 3664.)

4.  The parties agree that the court ***may also*** order restitution to persons other than the victim(s) of the offense(s) of conviction in any amount up to and including $▨▨▨▨▨▨▨. (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3), 3664.)

5.  Restitution is not applicable.

## 6.  FINE (U.S.S.G. § 5E1.2)

a.  <u>Fines for Individual Defendants</u>

The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).)  Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table. (*See* U.S.S.G. § 5E1.2(b).)  However, there are exceptions to this general rule. (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

b.  <u>Fine Range from Fine Table  (U.S.S.G. § 5E1.2(c)(3))</u>

| **Minimum Fine** | **Maximum Fine** |
|---|---|
| $10,000 | $250,000 |

E-3

| Defendant: | Usman Butt | Count: | 1 |
|---|---|---|---|
| Docket No.: | 13-20039 | Statute(s): | 18 U.S.C. § 1349 |

7. **SPECIAL ASSESSMENT(S)  (U.S.S.G. § 5E1.3)**

The court must impose a special assessment on every count of conviction.  The special assessments for individual defendants are:

- $100.00 for every count charging a felony ($400 for a corporation),
- $25.00 for every count charging a Class A misdemeanor ($125 for a corporation),
- $10.00 for every count charging a Class B misdemeanor ($50 for a corporation), and
- $5.00 for every count charging a Class C misdemeanor or an infraction ($25 for a corporation).

The defendant must pay a special assessment or special assessments in the total amount of $ 200.00 .

8. **FORFEITURE (U.S.S.G. § 5E1.4)**

[X] Assets of the defendant will be forfeited.

[ ] Assets of the defendant will not be forfeited.

9. **ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES**

List any additional applicable guideline, policy statement, or statute.

_____

_____

10. **UPWARD OR DOWNWARD DEPARTURE  (U.S.S.G. ch. 5, pts. H & K)**

List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range.

_____

_____

_____

Rev. 07/13

E-4